Filed in Deuel District Court
*** EFILED ***
Case Number: D78CI210000037
Transaction ID: 0014994012
Filing Date: 12/22/2021 09:20:13 PM MST

## IN THE DISTRICT COURT OF DEUEL COUNTY, NEBRASKA

| | | |
|---|---|---|
| BARBARA SIMMONS, | ) | CASE NO. CI 21- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| M AND J TRUCKING, INC., DJS | ) | |
| EXPRESS, LLC, and STANDAGE | ) | |
| TRUCKING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, Plaintiff Barbara Simmons by and through counsel, and for her causes of action against Defendants M and J Trucking, Inc., DJS Express LLC, and Standage Trucking, LLC, Plaintiff Barbara Simmons state as follows:

### Parties

1.      Plaintiff Barbara Simmons ("Simmons") is an individual who resides at 121 Corinth Church Rd., Salemburg, NC 28385.

2.      Defendant M and J Trucking, Inc. ("M and J") is a corporation domiciled in California and can be served at 3200 Truxel Rd. Apt. 187, Sacramento, CA 95833

3.      Defendant DJS Express, LLC ("DJS") is a Wyoming Limited Liability Company.

4.      Defendant DJS Express, LLC's registered agent is Loretta Rae Howieson, located at 115 Alecias Way, P.O. Box 1760, Evanston, WY 82930.

5.      Defendant Standage Trucking, Inc. ("Standage") is a Nebraska Corporation and can be served by registered agent at 37995 295th Road, Ravenna, NE 68869.

{401086.DOCX }

EXHIBIT

A

## JURISDICTION

6.      This Court has subject matter jurisdiction over this matter as this Court is a Court of general jurisdiction.

7.      This Court has personal jurisdiction over Defendants M and J, DJS, and Standage because they committed tortious acts within this state.

8.      Venue is proper in this Court because the actions which give rise to this action occurred in Deuel County.

## FACTS

9.      On August 19, 2021, at approximately 9:51pm, Jagjeevan Singh was driving a semi tractor-trailer ("M and J tractor-trailer") westbound on Interstate 80 near mile marker 102 in Deuel County, Nebraska.

10.      Approximately, one hour before the crash, substantial rainfall occurred, and lasted until about fifteen minutes before the crash.

11.      At the time, substantial construction was being performed on I-80, such that all traffic was traveling on the south side of the divided highway, making the stretch of I-80 a two-lane highway.

12.      Jagjeevan Singh was driving the M and J tractor-trailer for M and J Trucking, Inc.

13.      At approximately the same time and place, Corbin Allen Steensen was driving a semi-tractor-trailer ("DJS tractor-trailer") westbound on I-80 behind the M and J tractor trailer.

14.      At approximately the same time and place, Erick Fletcher was driving

{401086.DOCX }

westbound on I-80 behind the DJS tractor-trailer, and Plaintiff Simmons was a passenger in Erick Fletcher's truck.

15.    At approximately the same time and place, William Earl Rasmussen was driving a semi tractor-trailer ("Standage tractor-trailer") eastbound on I-80.

16.    Mr. Singh allowed the tractor-trailer he was driving to veer off the roadway and in an attempt to reenter the roadway, overcorrected causing the M and J tractor-trailer to strike the Standage tractor-trailer.

17.    The M and J tractor-trailer jackknifed, causing the tractor-trailer to roll onto its side and blocked both lanes of traffic.

18.    Mr. Steensen, driving the DSJ tractor-trailer behind the M and J tractor-trailer, was unable to stop the DSJ tractor-trailer and directed his tractor-trailer into the grass median to the North.

19.    Erick Fletcher's vehicle was traveling around 50 miles per hour at the time of the crash. Plaintiff Simmons was a passenger in Erick Fletcher's vehicle.

20.    Because of the dark night and the M and J tractor-trailer obscuring the view, Erick Fletcher was unable to stop his vehicle.

21.    Erick Fletcher directed his vehicle to the North median where he struck the DSJ tractor-trailer.

22.    As a result of said collision, Plaintiff Simmons sustained substantial injuries.

23.    At all relevant times, Defendant M and J Trucking controlled the use of the M and J tractor-trailer operated by Mr. Singh.

24.     At all relevant times, Defendant M and J's driver Mr. Singh was acting as an agent, servant, or employee of Defendant M and J Trucking, and was acting in the ordinary course of employment for Defendant M and J Trucking. As such, Defendant M and J Trucking is vicariously liable for the negligence of M and J Trucking's driver Mr. Singh under the principles of agency and *respondeat superior*.

25.     At all relevant times, Defendant M and J Trucking was a "motor carrier" and "employer" of drivers of "commercial motor vehicles" as defined in section 390.5 of the Federal Motor Carrier Safety Regulations, and was subject to the rules and regulations within Subtitle B, Chapter III, Subchapter B of Title 49 of the Federal Regulations.

26.     Defendant M and J Trucking's assigned USDOT number is 3259954.

27.     At all relevant times, the M and J Trucking tractor-trailer was a "commercial motor vehicle" under 49 C.F.R. § 390.5, and was operated under the motor carrier authority of Defendant M and J Trucking.

28.     At all relevant times, Defendant M and J Trucking's driver operated the M and J tractor-trailer with the knowledge, consent, and permission of Defendant M and J Trucking.

29.     At all relevant times, Defendant M and J Trucking controlled or had the right to control the operation and use of the M and J tractor-trailer.

30.     Mr. Steensen was driving the DJS tractor-trailer for DJS Express, LLC.

31.     At all relevant times, Defendant DJS Express, LLC controlled the use of the DJS tractor-trailer operated by Defendant DJS Express, LLC.

32.     At all relevant times, Defendant's driver Mr. Steensen was acting as an

{401086.DOCX }

agent, servant, or employee of Defendant DJS Express, LLC, and was acting in the ordinary course of employment for Defendant DJS Express, LLC. As such, Defendant DJS Express, LLC is vicariously liable for the negligence and of Defendant's driver Mr. Steensen under the principles of agency and *respondeat superior*.

33.     At all relevant times, Defendant DJS Express, LLC was a "motor carrier" and "employer" of drivers of "commercial motor vehicles" as defined in section 390.5 of the Federal Motor Carrier Safety Regulations, and was subject to the rules and regulations within Subtitle B, Chapter III, Subchapter B of Title 49 of the Federal Regulations.

34.     Defendant DJS Express, LLC's assigned USDOT number is 2499159.

35.     At all relevant times, the DJS tractor-trailer was a "commercial motor vehicle" under 49 C.F.R. § 390.5, and was operated under the motor carrier authority of Defendant DJS Express, LLC.

36.     At all relevant times, Defendant DJS Express's driver, Mr. Steensen operated the DJS tractor-trailer with the knowledge, consent, and permission of Defendant DJS Express, LLC.

37.     At all relevant times, Defendant DJS Express, LLC controlled or had the right to control the operation and use of the DJS tractor-trailer.

38.     At approximately the same time and place, William Earl Rasmussen was driving a semi tractor-trailer ("Standage tractor-trailer") eastbound on I-80.

39.     Mr. Rasmussen was driving the Standage tractor-trailer for Defendant Standage Trucking, LLC.

40.     At all relevant times, Defendant Standage controlled the use of the Standage tractor-trailer operated by Defendant Standage's driver Mr. Rasmussen.

41.     At all relevant times, Defendant Standage's driver, Mr. Rasmussen, was acting as an agent, servant, or employee of Defendant Standage, and was acting in the ordinary course of employment for Defendant Standage. As such, Defendant Standage is vicariously liable for the negligence and of Defendant Standage's driver Mr. Rasmussen under the principles of agency and *respondeat superior*.

42.     At all relevant times, Defendant Standage was a "motor carrier" and "employer" of drivers of "commercial motor vehicles" as defined in section 390.5 of the Federal Motor Carrier Safety Regulations, and was subject to the rules and regulations within Subtitle B, Chapter III, Subchapter B of Title 49 of the Federal Regulations.

43.     Defendant Standage's assigned USDOT number is 740734.

44.     At all relevant times, the Standage tractor-trailer was a "commercial motor vehicle" under 49 C.F.R. § 390.5, and was operated under the motor carrier authority of Defendant Standage.

45.     At all relevant times, Defendant Standage's driver operated the Standage tractor-trailer with the knowledge, consent, and permission of Defendant Standage.

46.     At all relevant times, Defendant Standage controlled or had the right to control the operation and use of the Standage tractor-trailer.

## Count I- Negligence
### Against Defendant M and J Trucking

47.     Plaintiff incorporates all previous paragraphs into this section.

48.     Defendant M and J Trucking's driver Jagjeevan Singh had a duty to exercise reasonable care in the operation of the M and J tractor-trailer.

49.     Defendant DJS' driver Corbin Steensen had a duty to exercise reasonable

care in the operation of the DJS tractor-trailer.

50.     Defendant Standage's driver Earl Rasmussen had a duty to exercise reasonable care in the operation of the Standage tractor-trailer.

51.     Defendant M and J Trucking's driver Jagjeevan Singh had a duty to operate the M and J tractor-trailer in a careful, prudent, and lawful manner.

52.     Defendant DJS' driver Corbin Steensen had a duty to operate the DJS tractor-trailer in a careful, prudent, and lawful manner.

53.     Defendant Standage's driver Earl Rasmussen had a duty to operate the Standage tractor-trailer in a careful, prudent, and lawful manner.

54.     Defendants' respective drivers had a duty not to operate the respective tractor-trailers while their ability or alertness was so impaired—or so likely to become impaired—through fatigue, or any other cause, that it was unsafe for them to begin or continue to operate the commercial motor vehicle.

55.     On August 19, 2021, Defendant M and J's driver Singh failed to exercise reasonable care in the operation of the M and J tractor-trailer, and failed to operate the M and J tractor-trailer in a careful, prudent and lawful manner, and was negligent in the operation of a motor vehicle in at least one of the following respects:

a.     In failing to keep a careful lookout;

b.     In failing to maintain control of the vehicle;

c.     In failing to maintain an awareness of the location of vehicles around him;

d.     In operating the vehicle in an impaired condition;

e.     In permitting the tractor-trailer to depart from the

{401086.DOCX }

pavement;

f.      In failing to safely return the tractor-trailer to the pavement and/or in overcorrecting the tractor-trailer;

g.      In permitting the tractor-trailer to collide with another motor vehicle;

h.      In failing to maintain an awareness of maneuvers available to him in the event of an emergency;

i.      In failing to respond appropriately to a collision;

j.      In using improper, deficient, inadequate or unsafe equipment;

k.      In operating a vehicle in an unsafe condition;

l.      In failing to conduct a proper pre-trip inspection;

m.      In failing to respond properly to inadequacies or deficiencies identified in a pre-trip inspection; and

n.      In other ways as will be revealed by discovery.

56.      Defendant M and J's driver Singh was negligent in violating particular Nebraska vehicle and traffic laws and regulations, including, but not limited to:

a.      Section 60-6139, which states that it is unlawful for the operator of any vehicle to fail or refuse to keep a vehicle within the boundaries of a marked traffic lane;

b.      Section 60-6,142, which states that no person shall drive on the shoulders of highways; and

c.      Section 60-6,179.02, which states that no person shall operate a commercial motor vehicle while using a hand-held mobile telephone, and that no person operating a commercial motor vehicle shall engage in texting.

57.      Defendant M and J's driver Singh was negligent in violating particular Federal Motor Carrier Safety Regulations, including, but not limited to:

{401086.DOCX }

a.   49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas: procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

b.   49 C.F.R. § 390.3, which states that every driver must comply with all applicable Federal Motor Carrier Safety Regulations;

c.   49 C.F.R. § 391.11, which states that a person shall not drive a commercial motor vehicle unless he is qualified under the regulations, which, among other things require that he can, by reason of experience or training, safely operate the type of commercial motor vehicle he drives, and that he is physically qualified to drive a commercial motor vehicle;

d.   49 C.F.R. § 392.2, which states that a commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated;

e.   49 C.F.R. § 392.3, which states that no driver shall operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

f.   49 C.F.R. § 392.7, which states that no commercial motor vehicle shall be driven unless the driver is satisfied that parts and accessories identified in the section are in good working order, and which states that drivers shall not fail to use or make use of such parts and accessories when and as needed;

{401086.DOCX }

g.   49 C.F.R. § 392.14, which states that extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as rain, adversely affect visibility or traction and that speed shall be reduced when such conditions exist;

h.   49 C.F.R. § 393.80, which states that every truck tractor shall be equipped with two rear-vision mirrors located so as to reflect a view of the highway to the rear along both sides of the vehicle;

i.   49 C.F.R. § 392.80, which states that no driver shall engage in texting while driving;

j.   49 C.F.R. § 392.82, which states that no driver shall use a hand-held mobile telephone while driving;

k.   49 C.F.R. § 396.7, which states that a motor vehicle in such a condition as to likely cause an accident must not be operated; and

l.   49 C.F.R. § 396.13, which states that before driving a motor vehicle, the driver must review the last driver vehicle inspection report and be satisfied that the motor vehicle is in safe operating condition.

58.   The State of Nebraska and the federal government promulgated, designed and intended these laws and regulations to protect a class of people that included Plaintiff.

59.   The State of Nebraska and the federal government promulgated, designed and intended these laws and regulations to prevent the injuries suffered by Plaintiff.

60.   Defendant M and J's driver Singh's violation of the Nebraska laws and federal regulations caused or contributed to cause the injuries to Plaintiff.

61.   Defendant M and J's driver Singh's actions and omissions as set forth above were negligent and directly caused and/or directly contributed to cause the subject crash

and the injuries to Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant M and J, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

## <u>Count II- Negligence - Hiring and Training</u><br>Against Defendant M and J

62.    Plaintiff incorporates all previous paragraphs into this section.

63.    Defendant M and J is vicariously liable for Defendant's driver Singh's negligence,  and violations of common law and regulatory and statutory requirements.

64.    Independent of its vicarious liability, Defendant M and J had a duty to exercise reasonable care in hiring, retaining, training, and supervising its drivers and other employees, including Defendant's driver Singh.

65.    Independent of his vicarious liability, Defendant M and J had a duty to exercise reasonable care in entrusting its vehicles and equipment—and any and all vehicles and equipment under its control—to responsible, competent and qualified drivers.

66.     Defendant M and J failed to exercise reasonable care in meeting its duties in at least the following respects:

    a.    In permitting Defendant's driver Singh to operate a commercial motor vehicle when he was not qualified to do so;

    b.    In failing to adequately train, instruct, supervise and monitor Defendant's driver Singh concerning the safe

operation of a tractor-trailer;

c.    In failing to adequately train, instruct, supervise and monitor Defendant's driver Singh regarding keeping a proper lookout, night-driving, proper lane-changing techniques, proper speed for the conditions present; proper pre-trip inspections, the relationships between speed, visibility and reaction time, anticipating hazards, and the dangers of distracted and drowsy driving;

d.    In failing to adequately train, instruct, supervise and monitor Defendant's driver Singh regarding proper procedures and protocols to anticipate and to be followed in the event of an emergency;

e.    In failing to train, instruct, supervise and monitor Defendant's driver Singh to make sure he was not too fatigued or ill, or not likely to become too fatigued or ill, to safely operate a commercial motor vehicle; and

f.    In permitting Mr. Singh to operate a commercial motor vehicle when he was too fatigued or ill, or likely to become too fatigued or ill, to safely operate the commercial motor vehicle.

67.    Defendant M and J was negligent in violating particular federal regulations, including, but not limited to:

a.    49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas: procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

b.    49 C.F.R. § 391.11, which states that a motor carrier shall not require or permit a person to drive a commercial motor

vehicle unless that person is qualified to drive a commercial motor vehicle;

c.   49 C.F.R. § 390.3, which states that every employer of drivers must be knowledgeable of and comply with all regulations contained in the Federal Motor Carrier Safety Regulations that are applicable to its operations, and which states that every driver and employee of a motor carrier must be instructed regarding all applicable federal motor carrier safety regulations;

d.   49 C.F.R. § 392.3, which states that a motor carrier shall not require or permit a driver to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

e.   49 C.F.R. § 392.80, which states that no motor carrier shall allow or require its drivers to engage in texting while driving;

f.   49 C.F.R. § 392.82, which states that no motor carrier shall allow or require its drivers to use a hand-held mobile telephone while driving a commercial motor vehicle;

g.   49 C.F.R. § 396.3, which states that every motor carrier must systematically inspect, repair, and maintain all motor vehicles subject to its control, and that parts and accessories must be in safe and proper operating condition at all times;

h.   49 C.F.R. § 396.7, which states that a motor vehicle must not be operated in such a condition as to likely cause an accident of the vehicle; and

i.   49 C.F.R. § 396.17, which states that it is the responsibility of the motor carrier to ensure that all parts and accessories on its commercial motor vehicles are maintained at standards set out in that subchapter.

68.     These regulations were designed and intended to protect a class of people that included Plaintiff.

69.     These regulations were designed and intended to prevent the injuries Plaintiff suffered.

70.     Defendant M and J's failure to exercise reasonable care and their violations of the federal regulations proximately caused the injuries suffered by Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant M and J, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

## Count III Negligence
### Against Defendant DJS

71.     Plaintiff incorporates all previous paragraphs into this section.

72.     Defendant DJS' driver Corbin Steensen had a duty to exercise reasonable care in the operation of the DJS tractor-trailer.

73.     Defendant DJS' driver Corbin Steensen had a to duty to operate the DJS tractor-trailer in a careful, prudent, and lawful manner.

74.     Defendant DJS' driver had a duty not to operate the respective tractor-trailer while their ability or alertness was so impaired—or so likely to become impaired—through fatigue, or any other cause, that it was unsafe for them to begin or continue to operate the commercial motor vehicle.

{401086.DOCX }

75.     On August 19, 2021, Defendant DJS' driver Steensen failed to exercise reasonable care in the operation of the DJS tractor-trailer, and failed to operate the DJS tractor-trailer in a careful, prudent and lawful manner, and was negligent in the operation of a motor vehicle in at least one of the following respects:

    a.    In failing to keep a careful lookout;

    b.    In failing to maintain control of the vehicle;

    c.    In failing to maintain an awareness of the location of vehicles around him;

    d.    In permitting the tractor-trailer to depart from the pavement;

    e.    In failing to maintain an awareness of maneuvers available to him in the event of an emergency;

    f.    In failing to respond appropriately to a hazard; and

    g.    In other ways as will be revealed by discovery.

76.     Defendant DJS' driver Steensen was negligent in violating particular Nebraska vehicle and traffic laws and regulations, including, but not limited to:

    a.    Section 60-6139, which states that it is unlawful for the operator of any vehicle to fail or refuse to keep a vehicle within the boundaries of a marked traffic lane;

    b.    Section 60-6,140(1) which states the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent;

    c.    Section 60-6,140(2) which states the driver of any motor vehicle drawing a trailer or semitrailer shall not follow another motor vehicle drawing a trailer or semitrailer more closely than one hundred feet; and

     d.     Section 60-6,179.02, which states that no person shall operate a commercial motor vehicle while using a hand-held mobile telephone, and that no person operating a commercial motor vehicle shall engage in texting.

77.    Defendant DJS' driver Steenson was negligent in violating particular Federal Motor Carrier Safety Regulations, including, but not limited to:

     a.     49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas: procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

     b.     49 C.F.R. § 390.3, which states that every driver must comply with all applicable Federal Motor Carrier Safety Regulations;

     c.     49 C.F.R. § 391.11, which states that a person shall not drive a commercial motor vehicle unless he is qualified under the regulations, which, among other things require that he can, by reason of experience or training, safely operate the type of commercial motor vehicle he drives, and that he is physically qualified to drive a commercial motor vehicle;

     d.     49 C.F.R. § 392.2, which states that a commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated;

     e.     49 C.F.R. § 392.3, which states that no driver shall operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

     f.     49 C.F.R. § 392.7, which states that no commercial motor vehicle shall be driven unless the driver is satisfied that parts and accessories

identified in the section are in good working order, and which states that drivers shall not fail to use or make use of such parts and accessories when and as needed;

g.    49 C.F.R. § 392.14, which states that extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as rain, adversely affect visibility or traction and that speed shall be reduced when such conditions exist;

h.    49 C.F.R. § 393.80, which states that every truck tractor shall be equipped with two rear-vision mirrors located so as to reflect a view of the highway to the rear along both sides of the vehicle;

i.    49 C.F.R. § 392.80, which states that no driver shall engage in texting while driving;

j.    49 C.F.R. § 392.82, which states that no driver shall use a hand-held mobile telephone while driving;

k.    49 C.F.R. § 396.7, which states that a motor vehicle in such a condition as to likely cause an accident must not be operated; and

l.    49 C.F.R. § 396.13, which states that before driving a motor vehicle, the driver must review the last driver vehicle inspection report and be satisfied that the motor vehicle is in safe operating condition.

78.    The State of Nebraska and the federal government promulgated, designed and intended these laws and regulations to protect a class of people that included Plaintiff.

79.    The State of Nebraska and the federal government promulgated, designed and intended these laws and regulations to prevent the injuries suffered by Plaintiff.

80.    Defendant DJS' driver Steensen's violation of the Nebraska laws and federal regulations caused or contributed to cause the injuries to Plaintiff.

81.     Defendant DJS' driver Steensen's actions and omissions as set forth above were negligent and directly caused and/or directly contributed to cause the subject crash and the injuries to Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant DJS, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

### Count IV- Negligence - Hiring and Training
### Against Defendant DJS

82.     Plaintiff incorporates all previous paragraphs into this section.

83.     Defendant DJS is vicariously liable for Defendant's driver Steensen's negligence, and violations of common law and regulatory and statutory requirements.

84.     Independent of its vicarious liability, Defendant DJS had a duty to exercise reasonable care in hiring, retaining, training, and supervising its drivers and other employees, including Defendant's driver Steensen.

85.     Independent of his vicarious liability, Defendant DJS had a duty to exercise reasonable care in entrusting its vehicles and equipment—and any and all vehicles and equipment under its control—to responsible, competent and qualified drivers.

86.      Defendant DJS failed to exercise reasonable care in meeting its duties in at least the following respects:

      a.     In permitting Defendant's driver Steensen to operate a commercial motor vehicle when he was not qualified to do so;

b.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Steensen concerning the safe operation of a tractor-trailer;

c.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Steensen regarding keeping a proper lookout, night-driving, proper lane-changing techniques, proper speed for the conditions present; proper pre-trip inspections, the relationships between speed, visibility and reaction time, anticipating hazards, and the dangers of distracted and drowsy driving;

d.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Steensen regarding proper procedures and protocols to anticipate and to be followed in the event of an emergency;

e.   In failing to train, instruct, supervise and monitor Defendant's driver Steensen to make sure he was not too fatigued or ill, or not likely to become too fatigued or ill, to safely operate a commercial motor vehicle; and

f.   In permitting Mr. Steensen to operate a commercial motor vehicle when he was too fatigued or ill, or likely to become too fatigued or ill, to safely operate the commercial motor vehicle.

87.   Defendant DJS was negligent in violating particular federal regulations, including, but not limited to:

a.   49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas: procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

b.  49 C.F.R. § 391.11, which states that a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle;

c.  49 C.F.R. § 390.3, which states that every employer of drivers must be knowledgeable of and comply with all regulations contained in the Federal Motor Carrier Safety Regulations that are applicable to its operations, and which states that every driver and employee of a motor carrier must be instructed regarding all applicable federal motor carrier safety regulations;

d.  49 C.F.R. § 392.3, which states that a motor carrier shall not require or permit a driver to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

e.  49 C.F.R. § 392.80, which states that no motor carrier shall allow or require its drivers to engage in texting while driving;

f.  49 C.F.R. § 392.82, which states that no motor carrier shall allow or require its drivers to use a hand-held mobile telephone while driving a commercial motor vehicle;

g.  49 C.F.R. § 396.3, which states that every motor carrier must systematically inspect, repair, and maintain all motor vehicles subject to its control, and that parts and accessories must be in safe and proper operating condition at all times;

h.  49 C.F.R. § 396.7, which states that a motor vehicle must not be operated in such a condition as to likely cause an accident of the vehicle; and

i.  49 C.F.R. § 396.17, which states that it is the responsibility of the motor carrier to ensure that all parts and accessories on its commercial motor vehicles are maintained at standards set out in that subchapter.

88.     These regulations were designed and intended to protect a class of people that included Plaintiff.

89.     These regulations were designed and intended to prevent the injuries Plaintiff suffered.

90.     Defendant DJS' failure to exercise reasonable care and their violations of the federal regulations proximately caused the injuries suffered by Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant DJS, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

## Count V- Negligence
### Against Defendant Standage

91.     Plaintiff incorporates all previous paragraphs into this section.

92.     Defendant Standage's driver Earl Rasmussen had a duty to exercise reasonable care in the operation of the Standage tractor-trailer.

93.     Defendant Standage's driver Earl Rasmussen had a duty to operate the Standage tractor-trailer in a careful, prudent, and lawful manner.

94.     Defendant Standage's driver Earl Rasmussen had a duty not to operate the respective tractor-trailer while his ability or alertness was so impaired—or so likely to become impaired—through fatigue, or any other cause, that it was unsafe for them to begin or continue to operate the commercial motor vehicle.

95.     On August 19, 2021, Defendant Standage's driver Earl Rasmussen failed to exercise reasonable care in the operation of the M and J tractor-trailer, and failed to operate the Standage tractor-trailer in a careful, prudent and lawful manner, and was negligent in the operation of a motor vehicle in at least one of the following respects:

      a.      In failing to keep a careful lookout;

      b.      In failing to maintain an awareness of the location of vehicles around him;

      c.      In failing to avoid the collision with the M and J tractor-trailer;

      d.      In permitting the tractor-trailer to collide with another motor vehicle;

      e.      In failing to maintain an awareness of maneuvers available to him in the event of an emergency;

      f.      In failing to respond appropriately to a collision;

      g.      In using improper, deficient, inadequate or unsafe equipment;

      h.      In operating a vehicle in an unsafe condition;

      i.      In failing to conduct a proper pre-trip inspection;

      j.      In failing to respond properly to inadequacies or deficiencies identified in a pre-trip inspection; and

      k.      In other ways as will be revealed by discovery.

96.     Defendant Standage's driver Earl Rasmussen was negligent in violating particular Federal Motor Carrier Safety Regulations, including, but not limited to:

      a.      49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas:

procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

b.   49 C.F.R. § 390.3, which states that every driver must comply with all applicable Federal Motor Carrier Safety Regulations;

c.   49 C.F.R. § 391.11, which states that a person shall not drive a commercial motor vehicle unless he is qualified under the regulations, which, among other things require that he can, by reason of experience or training, safely operate the type of commercial motor vehicle he drives, and that he is physically qualified to drive a commercial motor vehicle;

d.   49 C.F.R. § 392.2, which states that a commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated;

e.   49 C.F.R. § 392.3, which states that no driver shall operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

f.   49 C.F.R. § 392.7, which states that no commercial motor vehicle shall be driven unless the driver is satisfied that parts and accessories identified in the section are in good working order, and which states that drivers shall not fail to use or make use of such parts and accessories when and as needed;

     g.     49 C.F.R. § 392.14, which states that extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as rain, adversely affect visibility or traction and that speed shall be reduced when such conditions exist.

97.    The federal government promulgated, designed and intended these laws and regulations to protect a class of people that included Plaintiff.

98.    The federal government promulgated, designed and intended these laws and regulations to prevent the injuries suffered by Plaintiff.

99.    Defendant Standage's driver Earl Rasmussen violation of the federal regulations caused or contributed to cause the injuries to Plaintiff.

100.    Defendant Standage's driver Earl Rasmussen actions and omissions as set forth above were negligent and directly caused and/or directly contributed to cause the subject crash and the injuries to Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Standage, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

## Count VI- Negligence - Hiring and Training
### Against Defendant Standage

101.    Plaintiff incorporates all previous paragraphs into this section.

102.    Defendant Standage is vicariously liable for Defendant's driver Rasmussen's negligence, and violations of common law and regulatory and statutory requirements.

{401086.DOCX }

103.   Independent of its vicarious liability, Defendant Standage had a duty to exercise reasonable care in hiring, retaining, training, and supervising its drivers and other employees, including Defendant's driver Rasmussen.

104.   Independent of his vicarious liability, Defendant Standage had a duty to exercise reasonable care in entrusting its vehicles and equipment—and any and all vehicles and equipment under its control—to responsible, competent and qualified drivers.

105.   Defendant Standage failed to exercise reasonable care in meeting its duties in at least the following respects:

   a.   In permitting Defendant's driver Rasmussen to operate a commercial motor vehicle when he was not qualified to do so;

   b.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Rasmussen concerning the safe operation of a tractor-trailer;

   c.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Rasmussen regarding keeping a proper lookout, night-driving, proper lane-changing techniques, proper speed for the conditions present; proper pre-trip inspections, the relationships between speed, visibility and reaction time, anticipating hazards, and the dangers of distracted and drowsy driving;

   d.   In failing to adequately train, instruct, supervise and monitor Defendant's driver Rasmussen regarding proper procedures and protocols to anticipate and to be followed in the event of an emergency;

   e.   In failing to train, instruct, supervise and monitor Defendant's driver Rasmussen to make sure he was not too fatigued or ill, or not likely to become too fatigued or ill, to safely operate a commercial motor vehicle; and

      f.     In permitting Mr. Rasmussen to operate a commercial motor vehicle when he was too fatigued or ill, or likely to become too fatigued or ill, to safely operate the commercial motor vehicle.

106.    Defendant Standage was negligent in violating particular federal regulations, including, but not limited to:

      a.     49 C.F.R. § 383.111, which states that all commercial motor vehicle operators have knowledge of the following areas: procedures for safe vehicle operations; the effects of fatigue, poor vision and general health upon safe commercial motor vehicle operation; proper procedures needed to use a commercial motor vehicle's safety systems in an emergency situation; proper procedures for signaling presence; speed management and variables such as speed, visibility, surface conditions, traffic flow, and stopping distance; hazard perception; emergency maneuvers such as evasive steering, emergency stopping, brake failure, what to do when sleepy while driving; and safely operating combination vehicles;

      b.     49 C.F.R. § 391.11, which states that a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle;

      c.     49 C.F.R. § 390.3, which states that every employer of drivers must be knowledgeable of and comply with all regulations contained in the Federal Motor Carrier Safety Regulations that are applicable to its operations, and which states that every driver and employee of a motor carrier must be instructed regarding all applicable federal motor carrier safety regulations;

      d.     49 C.F.R. § 392.3, which states that a motor carrier shall not require or permit a driver to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle;

107.   These regulations were designed and intended to protect a class of people that included Plaintiff.

108.   These regulations were designed and intended to prevent the injuries Plaintiff suffered.

109.   Defendant Standage's failure to exercise reasonable care and their violations of the federal regulations proximately caused the injuries suffered by Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Standage, for such damages that a jury determines to be fair and reasonable, together with prejudgment interest, costs, and for such other and further relief as the Court deems just and proper.

## DAMAGES

110.   Plaintiff incorporates all previous paragraphs into this section.

111.   As a direct and proximate result of the negligence of Defendants, Plaintiff Simmons sustained the following damages:

a.  Current Medical expenses in the amount of:

| Barbara Simmons: | |
| --- | --- |
| Regional West Medical Center | $242,123.69 |
| Simple Clinic | $208.70 |
| **Total** | **$242,332.39** |

{401086.DOCX }

b.  Permanent injury-NJI2nd §4.01(1);

c.  Permanent disfigurement- NJI2nd §4.01(1);

d.  Disability in the past and future-NJ2nd §4.01(1);

e.  Medical care and expenses in the past and future –NJI2nd § 4.01(2);

f.  Lost income and working time –NJ2nd §4.01(3)

g.  Loss future earning capacity –NJ2nd §4.01(4)

h.  Physical pain, mental suffering, and emotion distress in the past and it is reasonably certain that she will sustain physical pain, mental suffering andemotional suffering in the future –NJ2nd §4.01(5)

i.  Inconvenience in the past and future – Neb. Rev. Stat, § 25-21,185.08.

112.   Plaintiff Simmons' injuries have further caused Plaintiff Simmons to experience physical and mental pain, discomfort, and have required Plaintiff Simmons to undergo protracted medical treatment and will require future medical treatment.

WHEREFORE, Plaintiff prays for judgment against Defendants, for present special damages, future special damages and general damages, and additional amountswhich will fairly and adequately compensate Plaintiff for injuries, past and future medical care and expenses, past and future pain and suffering, present lost wages, future lost wages, lost earning capacity, pre-judgment interest, costs of this action, attorney fees, and further relief that the Court deems just and equitable.

## **Jury Trial Demand**

113.   Plaintiff demand a jury trial on all issues.

{401086.DOCX }

BARBARA SIMMONS, Plaintiff

BY:     /s/ Greg Abboud_____
        Greg Abboud, #17232
FOR:   Abboud Law Firm
        6530 S. 84th St.
        Omaha, NE 68127
        402-592-5555
        greg@abboudlawfirm.com

        AND
        Tim E. Dollar, MO #33123
        *(pro hac vice pending)*

        JJ Burns, MO #64758
        *(pro hac vice pending)*

        Jordan T. Dollar, MO #71868
        *(pro hac vice pending)*

        DOLLAR, BURNS, BECKER &
        HERSHEWE, LC
        110 Main St. Ste. 2600
        Kansas City, MO 641105
        816-876-2600
        timd@dollar-law.com
        jjb@dollar-law.com
        jordan@dollar-law.com
        ATTORNEYS FOR PLAINTIFF